UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 2:85CR50(AVC) |
| | : | |
| v. | : | |
| | : | |
| AVELINO GONZALEZ CLAUDIO | : | May 5, 2008 |

### DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR DESIGNATION AS COMPLEX CASE WARRANTING EXCLUDABLE TIME UNDER SPEEDY TRIAL STATUTE

Pursuant to the 6th Amendment to the United States Constitution and 18 U.S.C. § 3161, *et seq.*, ("Speedy Trial Act" or the "Act") the Defendant, Avelino Gonzalez Claudio ("Defendant" or "Mr. Gonzalez Claudio") objects to the Government's motion for continuance and hereby invokes his right to a speedy trial. As set forth below, this case is not "so unusual or so complex" as to justify an additional 18 months of delay in addition to the two month delay that has already passed since the Defendant's arrest on February 7, 2008. The delay is particularly acute given that the Defendant, who is 65 years old and without a felony record or previous incarceration, is incarcerated solely on the basis of the allegations in the indictment and under extreme conditions at Northern Correctional Institution. The continuance requested by the Government is excessive, violates the Sixth Amendment and the Speedy Trial Act, and violates the Fifth Amendment in the absence of the Defendant's immediate release from custody.

## I.    BACKGROUND

On the September 12, 1983 the Wells Fargo depot in West Hartford, Connecticut was robbed.  As a result, on March 21, 1986 a grand jury in the United States District Court for the District of Connecticut rendered a seventeen-count indictment against Avelino Gonzalez Claudio and eighteen other defendants for violations to 18 U.S.C. §§ 2113(a) and 2 (robbery of federally insured bank funds), 18 U.S.C. §§ 2113(d) and 2 (aggravated robbery of federally insured bank funds), 18 U.S.C. §§ 659 and 2 (theft from interstate shipment), 18 U.S.C. §§ 2314 and 2 (interstate and foreign transportation of stolen money), 18 U.S.C. § 1951 (conspiracy to interfere with commerce by robbery), and 18 U.S.C. §371 (conspiracy to rob federally insured bank funds, to commit a theft from interstate shipment, and to transport stolen money in interstate and foreign commerce) ("Indictment").  Mr. Gonzalez Claudio was not charged with violations of 18 U.S.C. §§ 659 and 2 (theft from interstate shipment) or 18 U.S.C. §§ 2314 and 2 (interstate and foreign transportation of stolen money).

On March 21, 1986 the United States District Court, District of Connecticut issued a warrant for the arrest ("Arrest Warrant") of Mr. Gonzalez Claudio on the basis of the Indictment.  However, Mr. Gonzalez Claudio was not arrested until 2008.  Between 1986 and 2008, two trials were held related to the Indictment; one in 1989 involving five of the defendants, and one in 1992 involving two of the defendants (one of whom was tried in absentia).

On February 7, 2008, the Arrest Warrant was executed and Mr. Gonzalez Claudio was presented before the United States District Court, District of Puerto Rico, and ordered detained. On February 11, 2008, the District Court in Puerto Rico ordered Mr. Gonzalez Claudio detained without bail and ordered him to be removed to the District of Connecticut.

On February 28, 2008, Mr. Gonzalez Claudio was arraigned in the United States District Court, District of Connecticut, before the Honorable Thomas P. Smith. Since his transfer to Connecticut, Mr. Gonzalez Claudio has been detained in the custody of the Connecticut Commissioner of Corrections at Northern Correctional Institution in Suffield, Connecticut. The characteristics of Northern Correctional Institution are discussed herein.

## II.     LAW

The Speedy Trial Act provides that trial "shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. 18 U.S.C. § 3161 (c)(1) (parenthetical in original). Here the Defendant was indicted on March 21, 1986, and subsequently presented in the District of Connecticut on February 28, 2008. Accordingly, the Act began to run on February 28, 2008. Absent excludable time, trial must commence on May 8, 2008.

The Act describes periods of delay that shall be excluded in computing the time within which the trial must commence. 18 U.S.C. § 3161 (h). In addition to 18 U.S.C. § 3161

(h)(1)(F), which essentially excludes the pendency of pretrial motions, the Government relies

on 18 U.S.C. § 3161 (h)(8)(A), which permits the exclusion of:

> Any period of delay resulting from a continuance granted by any judge on
> his own motion or at the request of the defendant or his counsel or at the
> request of the attorney for the Government, if the judge granted such
> continuance on the basis of his findings that the ends of justice served by
> taking such action outweigh the best interest of the public and the defendant
> in a speedy trial.

18 U.S.C. § 3161 (h)(8)(A).  The Government relies exclusively on the "complex case" factor

that instructs a judge to consider:

> [w]hether the case is so unusual or so complex, due to the number of
> defendants, the nature of the prosecution, or the existence of novel questions
> of fact or law, that it is unreasonable to expect adequate preparation for
> pretrial proceedings or for the trial itself within the time limits established by
> this section.

18 U.S.C. § 3161 (h)(8)(B)(ii).

An authorized exclusion under 18 U.S.C. § 3161 (h)(8) requires the trial court to find

and explain why the interests of justice outweigh the interests of the public and the defendant in

a speedy trial.  United States v. Gambino, 59 F.3d 353, 357-358 (2d Cir. 1995).  The trial

court, therefore, is vested with broad discretion to grant this exclusion when, in its view, the

case's complexity makes it necessary to grant counsel further time to prepare in order to ensure

a fair trial.  Id.  (citing United States v. Rojas-Contreras, 474 U.S. 231, 236 (1985)).  The

length of an exclusion for complexity must be not only limited in time, but reasonably related

to the actual needs of the case.  Id. at 358.

In this case, the Government's request for 18 months excludable time is not reasonably related to the "actual needs of the case," but is merely a request for a continuance so that it can get ready for a trial that it has had 22 years to prepare for. The Act expressly provides that a continuance should not be granted "because of . . . lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government." 18 U.S.C. § 3161 (h)(8)(C). As set forth below, the Court should not grant the Government's motion to continue this matter for 18 months.

## III. THE COURT SHOULD DENY THE GOVERNMENT'S MOTION FOR DESIGNATON AS A COMPLEX CASE WARRANTING EXCLUDABLE TIME UNDER THE SPEEDY TRIAL ACT

### A. This Case Is Not "So Unusual Or So Complex" As To Justify an 18 Month Continuance

The Government claims that the following factors make this case a "complex case" pursuant to 18 U.S.C. § 3161(h)(8)(A): the complexity of the indictment and anticipated trial; the extraordinary scope of investigative material from which the discovery and any trial evidence must be selected; and, the consequences of the 22 years of the Defendant's status as a fugitive upon preparations for pretrial proceedings and trial. *See* Govt's Brief at 2. Each of the above factors will be addressed in turn.

The Defendant does not dispute the Government's contentions that he was one of 19 individuals charged in the 17 count, 67 page superseding indictment that was returned 22 years ago; or that the defendant is named in 15 of the 17 counts. The Defendant does,

however, contest the Government's assertion that these factors make the case complex.   The Government further argues the following factors add to the complexity of the case: There are 150 boxes of evidentiary material held by the FBI; thousands of pages of FBI investigative reports; 300 boxes in the custody of the U.S. Attorney's office that contain many thousands of documents, most in Spanish, from more than 40 court-authorized search warrants; extensive telephone toll records; several hundred hours of court-authorized Title III interceptions, most or all in Spanish[1]; visual surveillance information stored in form of photographs, videotapes, and reports; bank records; car dealer records; and 200 witnesses identified and located for the last trial 16 years ago.  *See* Govt's Brief at 3.

The Government's argument in this regard is undermined by two important facts. First, the Government has conducted two trials related to the above referenced evidence, thus it is reasonable to assume that the Government does not simply have custody of thousands of pages of raw evidence and documents but instead, having previously prepared for trial twice, has digested, outlined and otherwise methodically organized the evidence.  Second, the Government has had 22 years to prepare for the potential prosecution of Avelino Gonzalez Claudio, Victor Gerena, and Norberto Gonzalez Claudio.

---

[1] The Government concedes that the interceptions were translated from Spanish to English.  *See* Govt's Brief at 3.  Additionally, as revealed in an appellate decision from a precursor Wells Fargo case, the Government has apparently translated all of the Spanish language wiretaps and documents into English, pursuant to order of the original trial court.  See United States v. Gonzales Claudio, 806 F.2d 334, 341, cert. denied, 479 U.S. 978 (2d Cir. 1986).

In advancing its complexity argument, the Government relies on cases that are easily distinguishable from the case at bar based on two key factors: (1) The cases had never been tried before; and (2) both parties consented to the complex designation or the nonmoving party declined to object to the designation. *See* Govt's Brief at 11-13 (citing United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181 (2d Cir. 1989) (all parties consented to designation of case as complex; the case, very clearly, was complex with eight defendants charged with 470 counts in violation of the Federal, Food, Drug, and Cosmetic Act, which required proof of more than 2500 separate offenses at trial); United States v. Kaufman, 354 F. Supp. 2d 1201 (D. Kan. 2005) (defendant joined in Government's motion to designate case as complex)).[2]

In light of the Government's vast experience in trying the Wells Fargo cases, United States. v. Colon, 477 F. Supp. 2d 419 (D.P.R. 2007) is more instructive than the litany of inapposite cases cited above. In Colon, the district court acknowledged that the "case involve[d] a plethora of documentary evidence, numerous witnesses, and [would] take [two to three] months to try. Id. at 422. Despite this finding, the district court concluded that the case

---

[2] See also United States v. Burke, 673 F. Supp. 1574 (N.D. Ga. 1986) (defendant waited two years prior to asserting his speedy trial rights; on several occasions counsel for the defendants made statements to the court indicating their belief that the case involved complex issues and would require extended time to brief and try); United States v. Banks, 2007 WL 1520109, 2 (D. Colo. May 21, 2007) (unpublished) (attached hereto at *Tab C*) (Government's Motion for Complexity Finding was unopposed by defense counsel); United States v. Casas, 425 F.3d 23, 31-36 (1st Cir. 2005); and United States v. Paul, 326 F. Supp. 2d 382 (2004) (defendant did not object to initial designation of case as complex; co-defendants agreed that case was complex).

was "not complex from the government's viewpoint," in part[3] because the case was an "offshoot of the principal case" in which the Government had already conducted a complete trial for two other defendants. Id.

The present case is not complex for the very same reason Colon was not complex – the Government has had a chance to dress rehearse the Wells Fargo case twice over the past 22 years. The Government surely poured much time and effort to sort through the evidence and locate witnesses to prepare for the first Wells Fargo trial. After the first trial concluded, the Government had even more time to sort through the evidence and sharpen its trial strategy to prepare for the second Wells Fargo trial. The Government allegedly searched diligently for Mr. Gonzalez Claudio for many years before and after the second trial. Clearly, the Government felt that the Wells Fargo chapter of Connecticut's history was not ready to come to a close. Consequently, if the Government searched diligently for Mr. Gonzalez Claudio, one must assume that they did so in anticipation of his eventual trial. As a result, the Government has had nearly twenty-five years to prepare for the trial of Mr. Gonzalez Claudio; a trial which will be the third round involving much of the same evidence and players consequently, this matter cannot fairly be characterized as complex.

---

[3] While the court also noted that the same prosecutor who tried the first case had been involved in some of the pretrial proceedings of the second trial, he was nonetheless off the case when the Government asked the district court to designate the case as complex. See Colon, 477 F.Supp.2d at 422.

8

A continuance should not be granted "because of . . . lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government." 18 U.S.C. § 3161 (h)(8)(C). If the Government did not prepare for Mr. Gonzalez Claudio's trial over the years, but rather chose to box up and ship off the evidence, lose touch with witnesses, and forgo opportunities to maintain its institutional memory, it cannot be said that the Government has diligently prepared for this trial. Because the Government has not diligently prepared for trial, the Court must deny the Government's motion because it amounts to a request for a continuance on a ground specifically prohibited by the Act. See United States v. Harden, 10 F. Supp. 2d 556 (Dist.S.C. 1997) (concluding that a continuance was inappropriately entered because the Government was not diligent and thus sought the continuance on a basis "specifically forbidden by the Speedy Trial Act").

**B.    Incarceration of the Defendant for the Period of Excludable Delay Requested by the Government is Constitutionally Excessive, Violates His Due Process Rights, and Will Require His Release**

The Government may detain a defendant prior to trial consistent with the Due Process Clause of the Fifth Amendment so long as confinement does not amount to "punishment of the detainee." United States v. Millan, 4 F.3d 1038, 1043 (2d Cir. 1993) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)); see also United States v. Salerno, 481 U.S. 739, 746 (1987) (pretrial detention must be "regulatory, not penal"). "Absent an expressed intention to punish, whether detention constitutes impermissible punishment or permissible regulation turns on whether the government has a nonpunitive reason for detention and whether detention 'appears

excessive in relation to' the nonpunitive purpose." Id. (citing Wolfish, 441 U.S. at 538

(quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 169 (1963)). Pretrial detention of a

defendant, when of reasonable duration, serves important regulatory purposes, including the

prevention of flight and the protection of the community from a potentially dangerous

individual. Salerno, 481 U.S. at 747-49; United States v. Gonzales Claudio, 806 F.2d 334,

338 (2d Cir. 1986) (prevention of flight is valid regulatory goal). However, when detention

becomes "excessively prolonged," it may no longer be reasonable in relation to the regulatory

goals of detention, in which event a violation of due process occurs. See Millan, 4 F.3d at

1043 (citing Salerno, 481 U.S. at 747 n.4; Gonzales Claudio, 806 F.2d at 339).

To determine whether the length of pretrial detention has become constitutionally

excessive, the court must weigh three factors:  " '(i) the length of detention; (ii) the extent of

the prosecution's responsibility for the delay of the trial; and (iii) the strength of the evidence

upon which the detention was based,' United States v. Orena, 986 F.2d 628, 630 (2d Cir.

1993); that is, the evidence concerning risk of flight and danger to the safety of any other

person or the community." See Id. (applying test to dangerousness); United States v. Ojeda

Rios, 846 F.2d 167, 169 (2d Cir. 1988) (per curiam) (applying test to risk of flight and

dangerousness).

<div align="center">1.        Length of detention</div>

"Detention that has lasted for fourteen months and, without speculation, is scheduled to

last considerably longer, points strongly to a denial of due process." Gonzales Claudio, 806

F.2d at 341 (citing <u>United States v. Zannino</u>, 798 F.2d 544, 548 (1st Cir. 1986), <u>cert. denied</u>,

494 U.S. 1082 (1990) ("we shall assume that in many, perhaps most, cases, sixteen months

would be found to exceed the due process limitations on the duration of pretrial

confinement")).  Length of detention itself, however, is not dispositive and therefore "will

rarely by itself offend due process."  <u>Orena</u>, 986 F.2d at 631.  Courts consider, in addition to

the length of detention, whether "there are conditions of release that will reasonably assure the

appearance of the [defendant] as required and the safety of any other person and the

community."  18 U.S.C. § 3142(g).

Designating this case as complex and allowing an 18 month continuance before trial

while the defendant remains incarcerated, constitutes a due process violation.  The Defendant

has been incarcerated since his arrest on February 7, 2008, adding to this period of detention

18 months and then the period of time in which the trial will commence, leads to the

ineluctable conclusion that his incarceration will be excessive and unconstitutional.  <u>See</u>

<u>Gonzales Claudio</u>, 806 F.2d at 341 (14 month pretrial incarceration excessive);  <u>Zannino</u>, 798

F.2d at 548 (Court assumes that in many or most cases, sixteen months would be found to

exceed the due process limitations on the duration of pretrial confinement).

Additionally, the conditions of Mr. Gonzalez Claudio's confinement transform it from

regulatory confinement to impermissible punishment.  As stated previously, Mr. Gonzalez

Claudio has been incarcerated at Northern Correctional Institution, the highest security prison

in Connecticut.  Northern is the state's only level five maximum security facility. Northern is a

restrictive housing facility that limits incoming inmates to their cell for 23 hours a day.  Mr.

Gonzalez Claudio, who is 65 years old, immediately upon being housed at Northern was

placed on Administrative Segregation.

Administrative Segregation requires "[p]lacement of an inmate on a Restrictive Housing

Status that results in a segregation of the inmate whose behavior *while incarcerated* poses a

threat to the security of the facility or a risk to the safety of staff or other inmates. . . ." *See*

*Tab A*, Connecticut Commissioner of Corrections, Northern Correctional Institution

Administrative Segregation Program.  Since Mr. Gonzalez Claudio had no history with

Connecticut Corrections prior to his incarceration at Northern, his designation was not based

on his prior misbehavior *while incarcerated*, but instead on the Commissioner of Corrections'

assumption that his alleged status as a member of Los Macheteros rendered him a danger to

staff and other inmates.  *See Tab B*, Connecticut Department of Corrections Restrictive Status

Report of Hearing for Placement or Removal.  The designation is punitive because inmates

placed in Administrative Segregation are locked down in their cells for 23 hours a day and they

are placed in full restraint when removed from their cells. *See Tab A*.[4]  It is no exaggeration to

say that Mr. Gonzalez Claudio, though not adjudicated guilty of any offense, is being housed

like an animal and therefore subject to excessive punishment.  In light of the conditions of Mr.

---

[4] Undersigned counsel has met with Mr. Gonzalez Claudio on numerous occasions and observed that Mr. Gonzalez Claudio was handcuffed in the front and manacled to a chain around his waist that extends down to his ankles where he is shackled in leg irons and then either attached to the floor or to a table in the professional visiting room

Gonzalez Claudio's confinement, it would be absurd to conclude that it is anything but punitive and violative of his Due Process rights.

    2.    <u>Extent of Government's responsibility for delay of the trial</u>

As stated previously, the Government's requested 18 month delay would simply be a continuance to enable the Government to prepare for trial – something it has already done twice and should have done over the course of the past 22 years.  Certainly the Government has had access to all evidence in the case and to transcripts of the prior two trials, thus the Government should be prepared to go forward within the time limit prescribed by the Speedy Trial Act. Consequently, any further delay as requested by the Government is the Government's responsibility and is inexcusable.

    3.    <u>The strength of the evidence upon which the detention was based</u>

Finally, Judge Smith ordered detention based on evidence demonstrating that the Defendant is a flight risk; however, in <u>United States v. Gonzales Claudio</u>, 806 F.2d 334 (2d Cir. 1986), the Second Circuit Court of Appeals held that even though the District Court found the defendants to be flight risks thereby justifying detention, the other two factors (length of detention and whether the prosecution was responsible for pretrial delay) militated in favor of the defendants' release. <u>Gonzales Claudio</u>, 806 F.2d at 343-344.  The same is true here; the continued detention of Mr. Gonzalez Claudio for an additional 18 months "would exceed even flexible standards of due process." See <u>Id.</u> at 344.

C.    **The Defendant's Alleged Fugitive Status Does Not Diminish His Rights Under The Speedy Trial Act**

The Government inappropriately points to several Sixth Amendment cases for the proposition that a defendant's rights under the Act are also "substantially diminished" merely because of fugitive activity. *See* Govt's Brief at 15-6 (citing United States v. Blanco, 861 F.2d 773 (2d Cir. 1988); United States v. Sandoval, 990 F.2d 481 (9th Cir. 1993); United States v. Mitchell, 957 F.2d 465 (7th Cir. 1992); Rayborn v. Scully, 858 F.2d 84 (2d Cir. 1988)). All of these cases apply the speedy trial factors[5] first articulated in Barker v. Wingo, 407 U.S. 514 (1972) to determine whether a defendant's Sixth Amendment rights have been violated.

There is a fundamental difference between the Sixth Amendment analysis and the framework of the Speedy Trial Act. The Barker test is concerned with *any* delay in the criminal process. *See, e.g.*, Rayborn, 858 F.2d at 89 (analyzing a period of delay between issuance of an arrest warrant and conviction). On the other hand, the Act is only concerned with periods of delay in the present case that occur between the date on which the "defendant has appeared before a judicial officer of the court in which such charge is pending" and the commencement of trial. *See* 18 U.S.C. § 3161 (c)(1).

In each of the cases cited by the Government, the defendant argued that her Sixth Amendment speedy trial rights had been violated because of a period of delay during which she was a fugitive. *See, e.g.*, Blanco, 861 F.2d at 778. It was in this context that the court in

---

[5] The Barker factors include: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant." Rayborn v. Scully, 858 F.2d 84, 89 (2d Cir. 1988).

Blanco stated that the defendant's claim "that her right to a speedy trial was denied carries almost no weight." Id. at 780.

While this conclusion may be appropriate in such cases under the Barker Sixth Amendment analysis[6], it does not follow from an analysis purely under the Speedy Trial Act unless the defendant is absent during the Act's relevant time period.[7] Although the Government alleges that Mr. Gonzalez Claudio was a fugitive for several years, he was never a fugitive during the relevant time period under the Act, specifically between his appearance before Magistrate Judge Smith on February 28, 2008 and the present. Consequently, the Government's use of a case such as Blanco to preclude Mr. Gonzalez Claudio from asserting his rights under the Act is misplaced.

Moreover, the assertion that Mr. Gonzalez Claudio's speedy trial rights under the Act are diminished or non-existent due to fugitive activity prior to the Act's relevant time period would constitute an unlawful prospective waiver. Cf. Zedner v. United States, 547 U.S. 489 (2006) (holding that "a defendant may not prospectively waive the application of the Act").

---

[6] It has been noted that the Act is more stringent in favor of the defendant than the Sixth Amendment because the latter "permits a more flexible approach based largely on the prejudice sustained by a defendant because of delays in prosecution." United States v. Iaquinta, 674 F.2d 260, 264 (4th Cir. 1982).

[7] If the defendant is absent during the relevant time period under the Act (in the present case, between the first appearance in this District and trial), the Government can invoke 18 U.S.C. § 3161 (h)(3)(A), which allows for the exclusion of "[a]ny period of delay resulting from the absence or unavailability of the defendant . . . ."

The Government's argument that his alleged fugitivity has an impact on his right to a speedy trial must be rejected.

I.    **CONCLUSION**

Based on the foregoing reasons, Mr. Gonzalez Claudio respectfully requests that this Court deny the Government's Motion for Designation as a Complex Case Warranting Excludable Time Under Speedy Trial Statute.

<div style="margin-left: 50%;">

DEFENDANT,
AVELINO GONZALEZ
CLAUDIO

By

Moira L. Buckley, Esq.
Federal Bar No. ct18803
James W. Bergenn Esq.
Federal Bar No. ct 00006
Morgan P. Rueckert, Esq.
Federal Bar No. ct 19838
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103
Tel: (860) 251-5836
Fax: (860) 251-5219
MBuckley@goodwin.com
His Attorneys

</div>

<u>CERTIFICATION OF SERVICE</u>

I hereby certify that a copy of the foregoing was mailed, via U.S. Mail, postage

prepaid, on this 5th day of May, 2008, to:

Henry K. Kopel, Esq.
Assistant United States Attorney
Office of the United States Attorney
157 Church Street, 23rd Floor
New Haven, CT  06510

Paul McConnell
Assistant United States Attorney
Office of the United States Attorney
450 Main Street
Hartford, CT  06103

Moira L. Buckley