## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 2:85CR50(AVC) |
| | : | |
| v. | : | |
| | : | |
| AVELINO GONZALEZ-CLAUDIO | : | May 15, 2008 |

## UNITED STATES OF AMERICA'S MOTION TO RECONSIDER IN PART, RULING ON MOTION FOR DESIGNATION AS COMPLEX CASE WARRANTING EXCLUDABLE TIME UNDER SPEEDY TRIAL ACT

The United States of America (the "United States") respectfully submits this motion to reconsider in part, the Court's May 12, 2008, Ruling on Motion for Designation as Complex Case Warranting Excludable Time Under Speedy Trial Act ("Excludable Time Ruling" or "Ruling"). Reconsideration is sought with respect to the amount of time deemed excludable under the Speedy Trial Act. We note that the arguments herein were initially prepared as a response to the defendant's memorandum in opposition to the United States' motion that sought a complex case designation ("Complex Case and Tolling Motion"), which response is due on May 16, 2008, four days after the Court issued its ruling.

### Argument

The United States' Complex Case and Tolling Motion requested that this matter be designated a complex case warranting excludable time under 18 U.S.C. § 3161(h)(8)(A), and sought 18 months of excludable time in order to prepare for and litigate pretrial proceedings and prepare for trial. The Court's Excludable Time Ruling concluded that this matter is a complex case, and that a continuance of the trial date is warranted under the Speedy Trial Act. However, the Ruling granted only 180 days, or 6 months, of excludable time from the date of the May 12, 2008, Excludable Time Ruling. Jury selection set for November 6, 2008.

In granting just one-third of the excludable time requested by the United States, the Court relied on two arguments made by the defendant in his opposition to the Complex Case and Tolling Motion ("Defense Opposition"): (1) "the government has prepared for two prior trials in this case"; and (2) "the government had 22 years to prepare for the trial of this defendant." Excludable Time Ruling at 6; Defense Opposition at 6. The United States respectfully submits that, in the context of this case, those circumstances do not in any significant way mitigate the need for the requested 18 months to conduct pretrial proceedings and prepare for trial. Specifically, the two arguments adopted by the Court cannot withstand scrutiny because: (1) they erroneously assume that a highly complex case permanently loses much of its complexity after a co-defendant has been tried, irrespective of that trial's remoteness in time; and (2) they misconstrue the meaning of "adequate preparation for trial proceedings" under the Speedy Trial Act, by reading into the statute a requirement that substantial trial preparations be completed prior to a defendant's initial presentment on the charges. In addition, we note that on the facts of this case, the 18 additional months of pretrial detention would not violate the defendant's due process rights.

I.    The Government's Having Prosecuted Two Trials of Other Defendants 16 and 19 Years Ago Does Not Significantly Reduce the Complexity of Conducting Pretrial Litigation and Trial Preparation in the Instant Case

The first of the two reasons relied on by the Court in denying the government's request for 18 months of excludable time was "the fact that the government has prepared for two prior trials in this case." This reasoning fails to account for certain inescapable realities that are operative in most cases, and that are magnified in complex cases. The first such reality is that preparing for a subsequent trial against a different defendant requires an independent review, assessment, and preparation of the evidence and witnesses pertinent to that defendant, and of the legal theories upon

-2-

which such evidence and testimony will be admitted. This reality is especially salient where, as here, the time of the previous trials is very remote, specifically, 19 and 16 years ago. Moreover, the scope of these requirements is especially great in a case as large as this, consisting of a complex conspiracy of 19 individuals, lasting approximately two years, and involving activities in Connecticut, Massachusetts, New York, Texas, Mexico, and Puerto Rico. Notwithstanding that some common "core" of the evidentiary material will be pertinent to all or most defendants, there remains for each defendant a separate and highly labor-intensive evidence-sifting process, which is an inescapable part of trial preparation.

The evidence-sifting process is especially cumbersome in cases where most of the raw documents are in a foreign language. Here, several thousands of such documents were seized in the more than 40 search warrants executed in the original investigation. Given the costs and time involved in generating admissible, written translations by court-certified interpreters, it was not then and is not now feasible to generate such translations of each and every Spanish-language document in the evidence inventory. Rather, for whatever defendant or group of defendants is pending trial at a particular time, the documents must first be informally reviewed with the assistance of translators, so that the documents pertinent to the particular defendant(s) pending trial can be flagged for selective translation, after which the selected translations are generated. This costly, labor-intensive process must be repeated if there is a subsequent trial of one or more other defendants. In this case, where the defendant spent 22 years in fugitive status, another thick layer of this process is added by virtue of the thousands of Spanish-language documents seized at the defendant's residence following his arrest, a significant portion of which are believed to include information pertinent to the charges.

As discussed in the government's initial motion papers, another significant reality in cases involving long-term fugitives is the predictable and inevitable attrition, by the time the fugitive is arrested and brought to trial, of the case agents and prosecutors having hands-on familiarity with the evidence, witnesses, and legal issues pertinent to the preparation of the case for trial. This reality is fully manifested in the present case, and renders the pretrial and trial preparations far less efficient than they would have been 20 years ago.[1]  Closely related to this is the likelihood that many significant witnesses will be either deceased, difficult or impossible to locate, or if found, lacking sufficient recall of the matters of which they once had knowledge. These circumstances – *all of which are the direct and foreseeable consequences of the defendant's evading apprehension for so long* – render the case more complex, in certain respects, than it would have been had the defendant been present for arraignment and trial at the time when the superseding indictment was returned, and when both the original investigative/prosecutive team was in place, and the witnesses' whereabouts were known and their recollections were fresh. See United States v. Shreiber, 535 F. Supp. 1359 (S.D.N.Y. 1982) (for trial of defendant after 15 years in fugitive status, "[t]he long period of time that has

---

[1] As explained in the government's Complex Case and Tolling Motion, time and attrition have resulted in there being "literally no agent left at the New Haven and San Juan FBI, and no prosecutor left at the Connecticut U.S. Attorney's office, who has the familiarity with the facts, documents, and evidence akin to that of the original investigative and prosecutive team." Id. at 9. Well before the defendant's arraignment in Connecticut federal court, the New Haven FBI began to search for the former agents who had substantial roles in the investigation and prosecution two decades ago. Even when some of those former case agents were located, however, their availability has been significantly delayed, and will remain limited in time, both because of their present work and family obligations in distant locations, and because of the need for retired agents to be cleared for access to secure FBI work locations and evidence repositories. Consequently, the *first* such agent who became available to work in New Haven arrived and began reviewing the evidence less than two weeks ago, during the week of May 5, 2008, and must return to his home office (Baltimore FBI) this week.

-4-

elapsed may prove to be more prejudicial to the government's chance for a successful prosecution than to [defendant]'s defense").

Accordingly, the fact that a case was prepared for trial against other co-defendants many years ago does not necessarily render the matter any less complex than it was at the time of the original indictment and arraignments. See United States v. Paul, 326 F.Supp.2d 382, 391 (E.D.N.Y. 2004) (rejecting "contention that while this case may have been complex in 2001, it somehow lost its complexity by November of 2003"); United States v. Burke, 673 F.Supp. 1574, 1578 (N.D. Ga. 1986) ("The complexity of a case such as the present case is unlikely to lose its complexity on a specific date or at the happening of any specific event."). Further, as noted above, the consequences of an especially long period of fugitivity between the times of indictment and trial can add new layers of complexity to the preparation and presentation of such a case.[2]

II.    "Adequate Preparation for Trial Proceedings" Under the Speedy Trial Act Means Post-Arraignment Preparation, and Does Not Obligate the Government to Prepare the Trial of a Fugitive Prior to His Apprehension

The second of the two reasons relied on by the Court in denying the government's request for 18 months of excludable time was that "the government had 22 years to prepare for the trial of this defendant." This reasoning necessarily assumes – contrary to the reality of trial practice as recognized in the Speedy Trial Act itself – that the government, and presumably the defense, are obligated to have their trial preparations largely completed even before a defendant has been arraigned.

_____

[2] Similarly, with a defendant who has not previously appeared in the case, one cannot simply assume that the volume of pre-trial motions litigation, and the time needed to draft pleadings and litigate hearings, will be substantially less than it was with respect to the previously-tried defendants.

The provisions of the Speedy Trial Act clearly manifest the contrary assumption, <u>viz.</u>, that the parties to a criminal prosecution shall be given adequate time to undertake trial preparations *after* a defendant's initial presentment before either a Judge or Magistrate-Judge in the district where the charges are pending. Specifically, 18 U.S.C. § 3161(c)(1) provides that, even after an indictment has been returned, the speedy trial clock does not commence to run until "the defendant has appeared before a judicial officer of the court in which such charge is pending . . . ."[3] <u>See</u> <u>also</u> <u>United States v. Pena</u>, 793 F.2d 486, 488 (2d Cir. 1986) ("Since the . . . defendants were fugitives from the date of the original indictment and were never arraigned, the speedy trial clock never began to run as to them."); <u>United States v. Brock</u>, 782 F.2d 1442, 1448 (7th Cir. 1986) ("when the indictment precedes the arraignment, the time period for the purpose of the Speedy Trial Act starts to run on the date of the arraignment"). Underlining the importance of this principle is the Speedy Trial Act's provision for delaying a defendant's trial where a later-arraigned co-defendant is joined for trial, and the speedy trial clock is reset to include the longer period remaining as to the later-arraigned co-defendant. <u>See</u> 18 U.S.C. § 3161(h)(7) (authorizing delays "when the defendant is joined for trial with a codefendant as to whom the time for trial has not run"); <u>Pena</u>, 793 F.2d at 489 ("under Section 3161(h)(7), cases involving multiple defendants are governed by a single speedy trial clock, which begins to run with the clock of the most recently added defendant").

---

[3] Section 3161(c)(1) provides in pertinent part:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

The foregoing principle does not change when the complexity of the case requires additional time to prepare the case for trial. The "complex case" provision of the Speedy Trial Act authorizes tolling of the speedy trial clock where

> the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section

18 U.S.C. § 3161(h)(8)(B)(ii). Nowhere in this sub-section of the Speedy Trial Act is there any suspension of the foregoing rule that the speedy trial clock commences only when the defendant has been presented on the charge(s) before a judicial officer in the district where the case is pending. It necessarily follows that the phrase in subsection 3161(h)(8)(B)(ii), "adequate preparation for pretrial proceedings or for the trial itself," imports the clearly-established meaning built into the Speedy Trial Act, of *post-arraignment* preparation for trial proceedings.

Accordingly, the logical predicate of the Court's Ruling, viz., that the government bore the obligation during the defendant's 22 years as a fugitive – prior to any arraignment, discovery process, plea negotiations, and motions litigation – to invest the vast resources needed to make the case trial-ready, and to preserve that trial-readiness throughout the intervening 22 years, is directly contrary to the text and meaning of the Speedy Trial Act. Such a requirement is also contrary to the common sense realities of trial practice.

To satisfy the trial preparation standard incorporated in the Court's Ruling, the government would have been required, many years ago, to assign a team of prosecutors and federal agents to prepare this extraordinarily complex case for trial, despite having no basis to know when or whether the defendant would be apprehended, whether there would ever be a trial, or whether the defendant,

if arrested, would elect to dispose of the case by a plea. Moreover, because there were *three* defendants on fugitive status over the past 22 years – Avelino Gonzalez-Claudio, Victor Gerena, and Norberto Gonzalez-Claudio – and because there would be no way to know whether any, or which, of those defendants would be apprehended, or whether circumstances would result in separate or joined trials – the government would have been required to conduct three separate processes of trial preparation, each one geared to the particular matrix of evidence pertinent to that particular defendant. Further, once such preparations had been substantially completed, the government would have been required to keep re-preparing the case(s) for trial – e.g., canvassing to up 200 witnesses about their current locations, availabilities, and recollections; re-assessing the trial plan(s) according to the changing availabilities of various witnesses; re-investing in new methods of evidence retention and presentation whenever a technology change occurred, for example, transferring all the reel-to-reel audiotapes to cassettes, then later re-transferring the audio-cassettes to CDs; and re-training new assistant U.S. attorneys and federal agents to be trial-ready any time one of the assigned team moved on to another position, whether inside or outside the respective prosecutor's or agent's office.[4]

---

[4] The foregoing discussion substantially understates the burdens that would actually result from a rule requiring a significant share of trial preparation to be completed before arraignment, because such a rule would affect not just one case, but the aggregate caseload handled by each prosecutor. The application of such a rule across the aggregate caseload illustrates its practical impossibility, insofar as more than 80 per cent of charged, criminal cases are disposed of by guilty plea, with a large share of such dispositions occurring well before the trial date and hence before substantial trial preparations have been completed. See, e.g., Barcay, Accuracy Inquiries for All Felony and Misdemeanor Pleas, 126 U. Pa. L. Rev. 88, 88 (1977) ("Although no national statistics are available, it is estimated that between eighty-five to ninety-five percent of all criminal convictions result from guilty pleas.").

In sum, it should be apparent that the phrase "adequate preparation for trial" under subsection 3161(h)(8)(B)(ii) of the Speedy Trial Act cannot be deemed to require pre-arraignment trial preparation without imposing a thoroughly unsustainable resource burden upon the government when seeking to prosecute long-term fugitives in complex cases. Such an interpretation not only lacks support in the text of the Speedy Trial Act, but also would be contrary to public policy and common sense, because it would give fugitives in complex cases a new and effective method for seeking to avoid prosecution altogether (as well as creating a new incentive for defendants to evade arrest and become fugitives). In effect, defendants in complex cases would be permitted to evade trial for literally decades, making the case ever more difficult to prosecute with the passing of time, then upon arrest, could veto an otherwise appropriate continuance by "asserting" their Speedy Trial Act rights. In those circumstances, the Speedy Trial Act would not serve to assure a fair and timely trial, but rather would be used as leverage to seek a dismissal and evade trial altogether. Cf. Schreiber, 535 F. Supp. at 1361 (observing, in Sixth Amendment speedy trial context, that for 15 years the fugitive defendant "did not want a speedy trial," and that "[t]he speedy trial requirements *should not operate to reward a recalcitrant and reluctant defendant*" (emphasis added)).

III.    An 18 Month Continuance While Defendant Remains Detained Would Not Violate His Due Process Rights

The Court found that continuing trial for 6 months while the defendant remains in pretrial detention would not violate due process. Excludable Time Ruling at 6-7. Insofar as the government seeks an 18 month continuance, we note that such a period of pretrial detention also would not, on the facts of this case, violate due process. See Complex Case and Tolling Motion at 14-15. The defendant's opposition memorandum ("Defense Opposition") argued to the contrary, but it relied

-9-

principally on a Court of Appeals ruling from this case that was superseded by another Court of

Appeals ruling in the case. Specifically, the defense relied on United States v. Gonzalez-Claudio, 806

F.2d 334 (2d Cir. 1986) (involving the defendant's brother, Orlando Gonzalez-Claudio), see Defense

Opposition at 10, 11, and 13, which held that "the continued detention of [the defendants] beyond

fourteen months would exceed . . . due process." 806 F.2d at 343. Critically, just seven months later,

the Court of Appeals revisited the same due process issues raised in Gonzalez-Claudio, with respect

to two co-defendants who also had been detained pending trial. United States v. Melendez-Carrion,

820 F.2d 56 (2d Cir.1987). Relying on certain additional, factual findings by the trial judge that had

not been part of the Gonzalez-Claudio record, the Court of Appeals held that a detention period

expected to last a total of 32 months through the end of trial would *not* violate due process.

Melendez-Carrion, 820 F.2d at 60-62.

The Melendez-Carrion decision is especially pertinent here, because the additional factual

findings that "were not available to us in Gonzalez-Claudio" had to do with "the extent to which the

prosecution bears responsibility for the [pretrial] delay." 820 F.2d at 60. The Court of Appeals

reasoned:

> . . . [A]ssisted by the additional findings supplied by the district court, we have
> determined that the prosecution is not responsible for a significant portion of the delay
> in bringing appellants to trial, and we therefore conclude that this factor weighs in
> favor of a finding that appellants' due process rights are not violated by their
> continued pretrial detention.

820 F.2d at 60.  There as here, the lion's share of responsibility for the pretrial delay consists of

circumstances caused by the defendant, not the government.  There as here, the additional period of

pretrial detention sought by the government would not violate due process.[5]

---

[5]  Both Gonzalez-Claudio and Melendez-Carrion utilized a three-factor test to determine
whether the length of pretrial detention violates due process: "the duration of confinement . . . , the
extent to which the prosecution bears responsibility for the delay . . . , and the strength of the
evidence indicating risk of flight."  Gonzalez Claudio, 806 F.2d at 340; Melendez-Carrion, 820 F.2d
at 59.  On the facts of this case, the analysis weighs heavily against finding any due process violation.
First, the detention period would be significantly shorter than the 32 months approved by the Court
of Appeals in Melendez-Carrion.  Second, for the several reasons set forth both in this motion to
reconsider and in the government's Complex Case and Tolling Motion, the responsibility for the
delay rests largely with the defendant, owing to the consequences of his willful and knowing
fugitivity over the past 22 years.  Finally, the evidence supporting Magistrate-Judge Smith's
determination that the defendant poses a flight risk is overwhelming – most clearly shown by the
defendant's having actually succeeded in fleeing the authorities for 22 years, but also shown by the
defendant's proven ability (evidenced at the detention hearing) to create and live under a false
identity, involving among other things, false passports, driver's licenses, a voter ID card, credit cards,
and a marriage certificate, some going as far back as the year 1986, when he was indicted.

-11-

## Conclusion

WHEREFORE, the United States respectfully requests that the Court reconsider the portion

of its Excludable Time Ruling that granted only a 6 month continuance under the Speedy Trial Act,

and issue an amended order granting an 18 month period of excludable time from the date of a

decision on the motion until a scheduled trial date.[6]

Respectfully submitted

NORA R. DANNEHY
ACTING UNITED STATES ATTORNEY

PAUL MCCONNELL
ASSISTANT UNITED STATES ATTORNEY
Fed. Bar No. phv02501
450 Main Street
Hartford, CT 06103
(860) 947-1101

HENRY K. KOPEL
ASSISTANT UNITED STATES ATTORNEY
Fed. Bar No. ct24829
157 Church Street, 23d Floor
New Haven, CT 06510
(203) 821-3700

---

[6] Alternatively, respecting that the determination to grant a 6 month continuance was "based upon the information currently available," Ruling at 6, the United States asks that the Court provide an opportunity at some later date for the government to request a hearing, present evidence, and argue the need for a further continuance, based on the facts as they exist at such time.

-12-

## CERTIFICATE OF SERVICE

I HEREBY certify that I caused a copy of the foregoing to be sent by first-class mail, postage prepaid, and by e-mail (.pdf format), this 15th day of May, 2008, to James W. Bergenn, Esq., Morgan P. Rueckert, Esq., and Moira L. Buckley, Esq., all at Shipman & Goodwin, One Constitution Plaza, Hartford, CT 06103-1919, and each having the respective e-mail address of jbergenn@goodwin.com, mrueckert@goodwin.com, and mbuckley@goodwin.com.

Paul H. McConnell
Assistant U.S. Attorney

-13-