UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 2:85CR50(AVC) |
| | : | |
| v. | : | |
| | : | |
| AVELINO GONZALEZ CLAUDIO | : | May 22, 2008 |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION RE: COURT'S RULING
ON MOTION FOR DESIGNATION AS A COMPLEX CASE**

Pursuant to D. Conn. L. Civ. R. 7(a)(1) and (c)(1)(2), and D. Conn. L. Cr. R. 1(c), the Defendant, Avelino Gonzalez Claudio ("Defendant" or "Mr. Gonzalez Claudio"), responds to the Government's motion for reconsideration of the Court's ruling on its motion for designation of this matter as a complex case warranting excludable time under the Speedy Trial Act. Based on arguments raised in the Defendant's opposition memorandum and on those asserted herein, Mr. Gonzalez Claudio respectfully requests that the Court deny the Government's Motion for Reconsideration.

I.   **BACKGROUND**

In its original motion, the Government asked the Court for 18 months of excludable time between the date of the Court's ruling on the motion and trial. Alternately, the Government asked for "120 days of excludable time from the date of a ruling on [the] motion,

*ORAL ARGUMENT
REQUESTED*

with a scheduling conference to be held towards the end of the 120 day period." *See Govt's. 4/10/08 Brief at 5.* On May 12, 2008, after considering the Government's motion and the Defendant's opposition thereto, the Court ruled that "[a] period of one hundred eighty (180) days, from the date of [the] order, shall be excluded from the speedy trial calculation," and jury selection is continued until November 6, 2008, at 11:00 a.m. *See Ruling re: Government's Motion for Designation as a Complex Case Warranting Excludable Time Under the Speedy Trial Act at 7.* On May 15, 2008, the Government filed its Motion for Reconsideration of the Court's May 12 ruling.

II.   ARGUMENT

    1.   **The Government's Claim That a 180 Day Continuance Is Insufficient Time In Which to Prepare For Trial Rings Hollow Given the Alternate Position Articulated in its Motion for Designation as a Complex Case.**

The Government's complaint on reconsideration, that the Court's order did not exclude a sufficient amount of time to enable preparation for trial, is significantly undercut by the Government's alternate position in its original motion seeking a continuance of 120 days of excludable time from the date of a ruling on the motion, at which point there would be a status conference. This open ended position does not foreclose the likelihood that the Court would order the trial to begin close in time to the status conference, thus, it is certainly possible that the Court's present order bequests more preparation time to the Government than if the Court had adopted the Government's alternate request in its original motion.

2

2.  **The Prosecution of Mr. Gonzalez Claudio Does Not Require the Government to Reinvent The Wells Fargo Case.**

The Government claims that the occurrence of two prior trials in this matter does not significantly reduce the complexity of litigating the Defendant's case because he is a "different defendant" and thus, the Government is required to conduct "an independent review, assessment, and preparation of the evidence and witnesses pertinent to the defendant, and of the legal theories upon which such evidence and testimony will be admitted." *See Govt's. 5/15/08 Brief at 2-3*. This argument implies that there is an open universe of evidence and legal theories that could apply to Mr. Gonzalez Claudio, but that never became relevant in the prior two trials. This is not a credible argument because all defendants were charged under both theories of accessorial and conspiratorial liability[1] thus, the Government was then and is now required to prove a connection between some or many of the defendants; this necessarily requires the presentation of most of the same evidence used in the prior trials. Accordingly, the Government need only read the transcript of the prior two trials to become familiar with the evidence and arguments presented.

There has never been an allegation that Mr. Gonzalez Claudio or any of the defendants operated in isolation. In fact, as reported in United States v. Maldonado-Rivera, 922 F.2d 934

---

[1] Fifteen counts charge the defendants as accessories, two counts charge them with conspiracy.

3

(1990),[2] an appeal from the first trial, the Government alleged that Mr. Gonzalez Claudio worked with others to organize the March 1984 Wells Fargo robbery proceeds transport to Mexico, which allegedly involved a team of individuals.[3] See United States v. Maldanado Rivera, 922 F.2d 934, 945 (1990). Given the Government's apparent theory in the original case, the evidence regarding Mr. Gonzalez Claudio was a necessary part of its proof. Consequently, it seems disingenuous for the Government to now claim that it will need 18 months to locate and cull out evidence regarding Mr. Gonzalez Claudio.

3. **According To Facts Reported in Second Circuit Decisions Related to the Original Wells Fargo Cases, The District Court Ordered The Translation of All Tapes and Documents, Not Only Those The Government Planned To Use At Trial.**

As in its original motion, the Government persists in alleging that it will need time to selectively translate materials from the "several thousands of . . . documents . . . seized in the more than 40 search warrants executed in the original investigation."[4] See *Govt's 5/15/08 Brief at 3*. The Government elaborates on the perceived problem:

> Given the costs and time involved in generating admissible, written translations by court-certified interpreters, it was not then and is not now feasible to generate such

---

[2] Roberto Jose Maldonado Rivera, Antonio Camacho Negron, Juan Segarra Palmer, and Norman Ramirez Talavera were the appellants in this case.

[3] Most of these individuals were either prosecuted in the first two trials or resolved their cases through guilty pleas.

[4] In its April 10 motion, the Government argued that the 150 boxes of evidence and materials held by the FBI and the 300 boxes held by the U.S. Attorney's Office "are understood to contain: many thousands of documents, *most in Spanish*, from more than 40 court authorized search warrants . . ." (Emphasis added).

> translations of each and every Spanish-language document in the evidence inventory. Rather, for whatever defendant or group of defendants is pending trial at a particular time, the documents must first be informally reviewed with the assistance of translators, so that the documents pertinent to the particular defendant(s) pending trial can be flagged for selective translation, after which the selected translations are generated. This costly, labor intensive process must be repeated if there is a subsequent trial of one or more other defendants.

See Govt's. 5/15/08 Brief at 3. However, as reported by the Second Circuit Court of Appeals in United States v. Gonzalez Claudio, 806 F. 2d 334 (1986) and United States v. Melendez-Carrion, 820 F.2d 56, 60 (1987) the Court *ordered all* of the wiretaps and documents translated into English. Gonzales Claudio, 806 F.2d at 341. Moreover, the Government began providing the defendants certified translations of wiretap audiotapes in December 1985 and *completed* the task by May 1986. Id. at 342. Additionally, the defendants moved for the translation of "all tapes and documents, *not just those the Government intend[ed] to use at trial*," and the Court granted the defendants' motions. (Emphasis added.) Id.

Accordingly, it appears that the Court ordered the Government to translate all transcripts and documents and the Government complied. In the event that there are untranslated documents, the Court should require the Government to submit to the Court and counsel a specific inventory of the materials that were not translated for the original cases, and an articulation of why it failed to comply with the Court's order.

5

    **4.**    **The Government's Vast Resources and Ability to Assign Successor Agents and Prosecutors to the Case Undercut the Claim That Trial Preparation Will Be Significantly Hampered By the Departure of the Original Case Prosecutors and Agents From the U.S. Attorney's Office and FBI.**

The Government claims that FBI agents and prosecutors who had "hands-on familiarity with the evidence, witnesses, and legal issues" pertinent to the case are no longer working in the New Haven or San Juan FBI offices, or in the Connecticut United States Attorney's Office. This argument gives the Department of Justice little credit for its ability to pass the torch on to successor agents and prosecutors as is done frequently by law enforcement agencies in cold case investigations across the country.

According to the Government "time and attrition have resulted in there being 'literally no agent left at the New Haven and San Juan FBI, and no prosecutor left at the Connecticut U.S. Attorney's Office, who has familiarity with the facts, documents and evidence akin to that of the original investigative and prosecutive team.'" See Govt's. 5/15/08 Brief at 4, n. 1 (quoting Govt's. 4/10/08 Brief at 8). This claim is misleading to the extent that it implies that continued attention and investigation of this matter were not priorities with the Department of Justice after the first two trials. In fact, giving credence to the FBI's representations to the Office of Inspector General ("OIG") in its defense of the September 2005 shooting death of Wells Fargo co-defendant Filiberto Ojeda Rios (by the FBI), the FBI *had been focused* on the Macheteros investigation and had assigned resources to the task in recent years:

> The Ojeda arrest operation was the culmination of a *major investigative effort* by the San Juan FBI that was led by Special Agent in Charge (SAC) Luis Fraticelli. Shortly

6

>after becoming SAC for the San Juan FBI in April 2004, Fraticelli made the apprehension of Ojeda a major priority. Fraticelli told the OIG that when he arrived in Puerto Rico, the San Juan FBI had assigned the equivalent of about 1.6 full-time agents to the Macheteros investigation. At Fraticelli's direction, the San Juan FBI formed a Domestic Terrorism group, which was later upgraded to Squad status. By April 2005, the Domestic Terrorism Squad was staffed with 11 Special Agents, 4 Intelligence Analysts, and two Task Force Agents from the Police of Puerto Rico. The Domestic Terrorism Squad was utilizing the *entire San Juan FBI Special Operations Group (SOG) for surveillance of suspected Macheteros and other associates of Ojeda and the other fugitives.*

(Emphasis added.) *See* http://www.usdoj.gov/oig/special/s0608/index.htm *(OIG Special Report: A Review of the September 2005 Shooting Incident Involving the FBI and Filiberto Ojeda Rios, August 2006, Ch. 2 at 3).* It is hard to imagine, given the recent efforts expended to apprehend Ojeda Rios and Mr. Gonzalez Claudio, that the Department of Justice never planned for the likelihood that a new team would be needed to pursue the potential prosecution of these gentlemen.

### 5. The Government's Concern That Trial Preparation Will Be Hampered Due To Difficulty Locating Witnesses and The Assumed Lack of Witness Recall Will Not Be Resolved By An Additional 18 Months Delay.

The Government argues that this case is more complex after the 22 year delay because of the "likelihood that many significant witnesses will be either deceased, difficult or impossible to locate, or if found, lacking sufficient recall of the matters of which they once had knowledge." *See* Govt's 5/15/08 at 4. Following this logic, a further delay of 18 months will only exacerbate the problems the Government envisions. Moreover, the argument is wholly speculative; the Government has not indicated whether it has tried to locate witnesses and if so,

whether it has had difficulty. The Government has had three months since Mr. Gonzalez Claudio's arrest to begin its search for witnesses, at the very least it should report its progress to the Court before assuming it will encounter such difficulties. See United States v. Burke, 673 F. Supp. 1574, 1580 (W.D. Ga. 1986) (defendants' argument that they would be prejudiced by delay in trial because it would be more difficult to locate witnesses and evidence was deemed "too conclusory" to be sufficient to establish actual prejudice).

The Government cites United States v. Paul, 326 F.Supp. 2d 382, 391 (E.D.N.Y. 2004) and United States v. Burke, 673 F. Supp. 1574, 1578 (N.D. Ga. 1986), for the proposition that the complexity of a case is not necessarily minimized over time. These cases are inapposite to the case at bar because neither case involved prior trials of the same matter, thus in neither Burke nor Paul did the Government have the opportunity to dress rehearse its case. Additionally, in Burke and Paul there was little contention on the part of the defendants that the cases were *not* complex. See Burke, 673 F. Supp. at 1578 (the defendant waited two years prior to asserting his speedy trial rights and on several occasions counsel for the defendants made statements to the court indicating their belief that the case involved complex issues and would require extended time to brief and try); see also United States v. Paul, 326 F. Supp. 2d 382 (2004) (defendant did not object to initial designation of case as complex; co-defendants agreed that case was complex).

### III. CONCLUSION

Based on the foregoing reasons, Mr. Gonzalez Claudio respectfully requests that the

Court deny the Government's Motion for Reconsideration of the Court's May 12 ruling.

DEFENDANT,
AVELINO GONZALEZ
CLAUDIO

By /s/ Moira L. Buckley
Moira L. Buckley, Esq.
Federal Bar No. ct18803
James W. Bergenn Esq.
Federal Bar No. ct 00006
Morgan P. Rueckert, Esq.
Federal Bar No. ct 19838
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103
Tel: (860) 251-5836
Fax: (860) 251-5219
MBuckley@goodwin.com
His Attorneys

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing was mailed, via U.S. Mail, postage prepaid, on this 22d day of May, 2008, to:

Henry K. Kopel, Esq.
Assistant United States Attorney
Office of the United States Attorney
157 Church Street, 23rd Floor
New Haven, CT  06510

Paul McConnell
Assistant United States Attorney
Office of the United States Attorney
450 Main Street
Hartford, CT  06103

Moira L. Buckley